UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY LANDSCAPE CONTRACTORS ASSOCIATION, et al., | |
| Plaintiffs, | Civil Action No. 17-8820 (MAH) |
| v. | |
| TOWNSHIP OF MAPLEWOOD, et al., | OPINION |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court by way of Plaintiffs' motion for attorneys' fees pursuant to N.J.S.A. 10:6-2(f) of the New Jersey Civil Rights Act ("NJCRA"). Pls.' Mot. for Att'y Fees, Oct. 7, 2021, D.E. 85. The Court has considered the parties' submissions. The Court also held an evidentiary hearing and heard oral argument on March 29, 2022. For the reasons set forth below, Plaintiffs' motion for attorneys' fees is **denied**.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are a coalition of landscape contractors, landscape industry suppliers, and affiliated professional organizations. Compl., Oct. 20, 2017, D.E. 1, at ¶¶ 15-35; *see also* Joint Stipulation of Facts, Mar. 14, 2022, D.E. 95, at ¶ 7. Defendants the Mayor of the Township of Maplewood and the Township Committee of Maplewood ("the Maplewood Township Committee") constitute the governing body of Defendant Township of Maplewood (collectively "the Township" or "Defendants"). Compl., D.E. 1, at ¶¶ 39-40.

1

On April 4, 2017, the Maplewood Township Committee enacted Ordinance No. 2854-17, entitled "An Ordinance Limiting Use of Gas Powered Leaf Blowers Within The Township of Maplewood" ("the Ordinance" or "the Leaf Blower Ordinance"). Joint Stipulation of Material Facts, D.E. 95, at ¶ 1. The Ordinance prohibited the use of gas-powered leaf blowers "within the Township of Maplewood from May 15th through September 30th of each year by all commercial entities." Ordinance No. 2854-17, attached as Exhibit A to Joint Stipulation of Material Facts, D.E. 95, at p. 8.[1] Commercial entities[2] caught violating this provision were subject to a monetary penalty and, after three or more offenses, loss of their license to perform work in the Township. *Id.*

The Ordinance also restricted the hours during which gas-powered leaf blowers could be used, and prohibited commercial entities from using gas-powered leaf blowers on Sundays. The Ordinance provided, in pertinent part:

> The use of gas powered leaf blowers by any person or entity is permitted only as follows:
>
> Monday through Friday    8:00 a.m. to 6:00 p.m.
> Saturdays    10:00 a.m. to 5:00 p.m.
>
> Commercial entities are not permitted to use gas powered leaf blowers on Sundays.
>
> Residents of the Township of Maplewood may use gas powered leaf blowers on Sundays between 11:00 a.m. and 5:00 p.m.

*Id.* at p. 9.

---

[1] All citations to exhibit page numbers in this Opinion refer to the electronic case filing ("ECF") page number at the top of each document.

[2] The Ordinance defined a commercial entity as follows: "A commercial entity shall include but not be limited to lawn maintenance businesses, tree removal or maintenance businesses, paving companies, gutter cleaning companies and shall include any person or entity charging a fee for services." Ordinance No. 2854-17, attached as Exhibit A to Joint Stipulation of Material Facts, D.E. 95, at p. 8.

2

On May 10, 2017, Plaintiff New Jersey Landscape Contractors Association ("the Association") alone filed a complaint against Defendants in Civil Action No. 17-3293. *N.J. Landscape Contractors Ass'n v. The Mayor of the Twp. of Maplewood*, Civ. No. 17-3293, Compl., D.E. 1 (D.N.J. May 10, 2017). The Association also moved for a preliminary injunction, seeking to temporarily restrain enforcement of the Ordinance. *N.J. Landscape Contractors Ass'n*, Civ. No. 17-3293, Mot. for Preliminary Injunction, May 10, 2017, D.E. 3; Joint Stipulation of Facts, D.E. 95, at ¶ 4. The Honorable Esther Salas, United States District Judge, heard oral argument and denied the motion on May 17, 2017. The District Court held that the Association failed to establish that it had standing to bring the suit and motion. *N.J. Landscape Contractors Ass'n*, Civ. No. 17-3293, Transcript, May 17, 2017, D.E. 9, at 60:16-63:12; *see also N.J. Landscape Contractors Ass'n*, Civ. No. 17-3293, Order, May 17, 2017, D.E. 10. That same day, the District Court memorialized the ruling in an Order that denied the Association's motion for a preliminary injunction and dismissed the Complaint without prejudice. *N.J. Landscape Contractors Ass'n*, Civ. No. 17-3293, Order, D.E. 10; Joint Stipulation of Facts, D.E. 95, at ¶ 5.

On October 20, 2017, Plaintiffs initiated this action by filing a four-count Complaint against Defendants. Compl., D.E. 1. Plaintiffs alleged that the Ordinance irrationally discriminated against them because of their commercial status and violated their rights under the United States Constitution, the New Jersey State Constitution, and the NJCRA. *Id.* at pp. 18-22; Joint Stipulation of Facts, D.E. 95, at ¶¶ 8-9. Plaintiffs' prayer for relief included demands for:

> a. A declaration and [sic] the Ordinance is void, invalid and unconstitutional on its face and as applied to Plaintiff/Plaintiff members on the grounds that it violates the Equal Protection Clauses of the United States and New Jersey Constitutions, and the Supremacy Clause of the United States Constitution;

      b. An award of damages to Plaintiffs for being unconstitutionally discriminated against and impermissibly regulated;

      c. An award to Plaintiffs of its full costs and attorneys' fees arising out of this litigation; and

      d. Such other and further relief as the Court deems just and equitable.

Compl., D.E. 1, at p. 23; *see also* Joint Stipulation of Facts, D.E. 95, at ¶ 9. Plaintiffs did not, however, seek injunctive relief to restrain enforcement of the Ordinance.

On March 19, 2018, the parties stipulated to dismissal of Plaintiffs' monetary damages claims against the Mayor of Maplewood and the Maplewood Township Committee with prejudice. Stipulation of Partial Dismissal, Mar. 19, 2018, D.E. 21, at p. 2. The parties also stipulated to dismissal of Count II of the Complaint with prejudice. *Id.*; *see also* Stipulation & Order, Mar. 20, 2018, D.E. 24 (entering parties' stipulation).

The parties engaged in discovery. In September 2019, they determined the matter was ripe for summary judgment motion practice. Joint Stipulation of Facts, D.E. 95, at ¶¶ 12-14. Defendants moved for summary judgment on November 8, 2019. Defs.' Mot. for Summary J., Nov. 8, 2019, D.E. 49. Plaintiffs thereafter filed opposing papers and simultaneously cross-moved for summary judgment. Pls.' Cross-Mot. for Summary J., Dec. 13, 2019, D.E. 54.

On March 9, 2020, while the parties awaited an oral argument date for their summary judgment motions, New Jersey Governor Philip D. Murphy issued Executive Order No. 103, which declared a public health emergency in New Jersey due to the COVID-19 outbreak. Executive Order No. 103, at p. 4, Mar. 9, 2020, https://www.nj.gov/infobank/eo/056murphy/pdf/EO-103.pdf. Governor Murphy thereafter issued several Executive Orders to address the COVID-19 public health emergency, including Executive Orders directing New Jersey residents "to stay at home until further notice," and imposing restrictions on business operations and

4

travel. *See, e.g.*, Executive Orders of Governor Philip Murphy, https://www.nj.gov/infobank/eo/056murphy/ (last visited Apr. 26, 2022); *see also* Joint Stipulation of Facts, D.E. 95, at ¶¶ 18-19.

On June 29, 2020, the Court scheduled oral argument on the parties' motions for August 13, 2020. Text Order, D.E. 59; *see also* Joint Stipulation of Facts, D.E. 95, at ¶ 20. One month later, on July 30, 2020, oral argument was adjourned without a new date, due to entirely unforeseen events affecting the Court. Order, D.E. 60.

On January 5, 2021, before oral argument on the parties' dispositive motions was re-scheduled, the Township Committee held a regularly scheduled meeting, during which Committee members and Maplewood residents discussed the prospect of amending the Leaf Blower Ordinance. Joint Stipulation of Facts, D.E. 95, at ¶ 21; *see also id.* at pp. 12-13. The Township Committee's January 5, 2021 meeting minutes state that during the meeting, Committeewoman Nancy Adams

> reported that in response to many residents' concerns and concerns over issues of sustainability and quality of life, there have been discussions on potentially amending the current Leaf Blower Ordinance. The first proposed change is to properly define what a gas-powered leaf blower is. The second proposal is to apply the ordinance equally to residents and commercial entities. They are also proposing to extend the ban from May 1st through September 30th.

Exhibit B to Joint Stipulation of Facts, *Id.* at p. 19. The Township Committee's January 5, 2021 meeting minutes also reflect that eleven members of the public spoke, either to support expanding the Leaf Blower Ordinance, or to advocate a wholesale ban on gas-powered leaf blowers in Maplewood. *Id.* at pp. 13-14. Several residents voiced concern about the blowers' negative effects on the environment, including pollution and soil erosion. *Id.* Others commented on gas-powered leaf blowers' "ill effects on the quality of life in the area" and creation of noise

5

pollution. *Id.* Additionally, some of those residents advocated banning or phasing out gas-powered leaf blowers in favor of other alternatives. *Id.* The meeting minutes do not indicate that any resident or Township Committee member spoke in opposition to either the Leaf Blower Ordinance, or the Ordinance's expansion.

Ordinance No. 3016-21, hereinafter referred to as the "Amended Ordinance," was proposed and introduced at the Maplewood Township Committee's January 19, 2021 meeting. Exhibit E to Joint Stipulation of Facts, D.E. 95, at p. 41. On February 2, 2021, the Township Committee convened and unanimously voted to amend the Leaf Blower Ordinance by adopting the Amended Ordinance. Exhibit D to Joint Stipulation of Facts, D.E. 95, at pp. 31-32; *see also* Joint Stipulation of Facts, D.E. 95, at ¶ 23. The meeting minutes do not reflect that anyone spoke in opposition to the then-proposed amendments. February 2, 2021 Meeting Minutes, Exhibit D to Joint Stipulation of Facts, D.E. 95, at p. 30.

The Amended Ordinance modified the Leaf Blower Ordinance in several ways. Perhaps most significant to this motion, the Amended Ordinance made the seasonal ban, the fines for violating the seasonal ban, and the prohibition against using gas-powered leaf blowers on Sundays applicable to "any person or entity" in the Township. *Id.* at p. 40 ¶¶ (2)-(4); *see also* Joint Stipulation of Facts, D.E. 95, at ¶¶ 27-28. In short, the Amended Ordinance eliminated the distinction between commercial entities and Maplewood residents. The Amended Ordinance also expanded the duration and reach of the Leaf Blower Ordinance by modifying the seasonal ban on gas-powered leaf blowers to "May 1st through September 30th of each year." Joint Stipulation of Facts at ¶¶ 27-28 & Exh. E, at p. 40 ¶ 1(b). Accordingly, under the Amended Ordinance, the ban began on May 1 of each year, rather than May 15. Finally, the Amended Ordinance defined what constitutes a gas-powered leaf blower. *Id.* at p. 39 ¶ 1(a).

The parties agreed that these amendments rendered Plaintiffs' claims moot, and stipulated to the dismissal of this action without prejudice to Plaintiffs' right to file a motion for attorneys' fees. Joint Stipulation of Dismissal, June 17, 2021, D.E. 70, at ¶¶ 2-3; Joint Stipulation of Facts, D.E. 95, at ¶¶ 29-31.

On October 7, 2021, Plaintiffs filed the instant motion, seeking an award of reasonable attorneys' fees and costs under the NJCRA and the "catalyst theory" established in New Jersey state jurisprudence. Pls.' Mot. for Att'y Fees, D.E. 85. Defendants oppose the motion. Defs.' Br. in Opp'n, Nov. 1, 2021, D.E. 86.

On March 29, 2022, the Court held a hearing on Plaintiffs' motion. Mr. Victor De Luca, a member of the Maplewood Township Committee for the past approximately twenty-three years, testified. Roger Desiderio, Esq., who has served as the Maplewood Township Attorney for the past approximately twenty-nine years, also testified.[3] Plaintiffs did not call any witnesses, but cross-examined Mr. De Luca and Mr. Desiderio. Following the testimony, the Court heard oral argument from the parties.

### III.   DISCUSSION

The NJCRA empowers the Court to "[i]n addition to any damages, civil penalty, injunction or other appropriate relief in an action . . . award the prevailing party reasonable attorney's fees and costs." N.J.S.A. 10:6-2(f). "[T]he phrase 'prevailing party' is a legal term of art" on which federal and New Jersey jurisprudence diverge.[4] *See Mason v. City of Hoboken*, 196 N.J. 51, 72-73 (2008). Both the United States Supreme Court and the New Jersey Supreme

---

[3] Mr. Desiderio also submitted a declaration as part of Defendants' opposition to the instant motion. Declaration of Roger Desiderio, Sept. 7, 2021, D.E. 86-2.

[4] During the March 29, 2022 hearing, Plaintiffs clarified that their application for fees is based solely upon New Jersey state law and jurisprudence.

7

Court consider a litigant "who has been awarded some relief by the court" a prevailing party. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001); *accord Mason*, 196 N.J. at 72. This definition encompasses both "[a] party in whose favor a judgment is rendered" and a litigant who has acquired an enforceable consent decree. *Buckhannon*, 532 U.S. at 603-04; *see also Mason*, 196 N.J. at 76.

New Jersey courts have also long recognized and applied a standard rejected by federal jurisprudence for determining who is a prevailing party: the catalyst theory. *Mason*, 196 N.J. at 73. "Under the catalyst theory, . . . a litigant will qualify as a 'prevailing party' entitled to an award of attorney's fees under a fee-shifting statute if the lawsuit 'achieves the desired result because [it] brought about a voluntary change in the defendant's conduct.'" *D. Russo, Inc. v. Twp. of Union*, 417 N.J. Super. 384, 389 (App. Div. 2010) (alteration in original) (quoting *Mason*, 196 N.J. at 72). The New Jersey Supreme Court has adopted a two-part test to determine whether a litigant who has not acquired a judgment or enforceable consent decree is a prevailing party under the catalyst theory. *Mason*, 196 N.J. at 76. Plaintiffs, as the party seeking fees, bear the burden of demonstrating (1) "a factual causal nexus between [their] litigation and the relief ultimately achieved;" in other words, that their efforts were a "necessary and important factor in obtaining the relief," and (2) "that the relief ultimately secured by [P]laintiffs had a basis in law." *Id.* at 73, 76 (quoting *Singer v. State*, 95 N.J. 487, 494 (1984)).

The parties disagree on a preliminary issue: whether Plaintiffs achieved their desired relief. Plaintiffs argue the answer is yes. Plaintiffs aver that they endeavored to end Defendants' (allegedly) unconstitutional discrimination against commercial entities, and that the Amended Ordinance gave Plaintiffs the equal treatment they demanded. *See* Pls.' Reply Br., Nov. 15, 2021, D.E. 87, at p. 7. Defendants make two arguments to the contrary. First, that Plaintiffs did

not receive any of the demands stated in their prayer for relief, including, at minimum, a declaration that the Leaf Blower Ordinance is unconstitutional. Defs.' Br. in Opp'n, D.E. 86, at p. 20. Second, that Plaintiffs fare worse under the Amended Ordinance because it lengthened the seasonal ban. *Id.* at pp. 19-20.

The Court cannot conclude that Plaintiffs achieved their desired relief. "Entitlement to attorneys' fees is predicated on the relationship between the relief sought and the relief obtained." *Warrington v. Vill. Supermarket, Inc.*, 328 N.J. Super. 410, 420 (App. Div. 2000) (first citing *Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 911 (3d Cir. 1985); and then citing *Singer*, 95 N.J. at 495). "A plaintiff is considered a prevailing party 'when actual relief on the merits of [the] claim materially alters the relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiffs." *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). In this matter, the Court finds Defendants' behavior has not altered in a way that "directly benefits" Plaintiffs. Although it is true that the Amended Ordinance eliminated the ban's distinction between commercial entities and Maplewood residents, that hardly directly benefits Plaintiffs. To the contrary, the Amended Ordinance terms are objectively worse for Plaintiffs because they extend the beginning of the ban each year from May 15 to May 1.

Plaintiffs contend that their purpose in initiating this litigation was to achieve equal application of the Leaf Blower Ordinance. However, from the inception of this litigation and in their summary judgment submissions, Plaintiffs sought a declaration that the Leaf Blower Ordinance was "void, invalid and unconstitutional on its face and as applied to [Plaintiffs]." Compl., D.E. 1, at p. 23; *see also* Pls.' Cross-Mot. for Summary J., D.E. 54-2, at pp. 3, 19-20, 23; Joint Stipulation of Facts, D.E. 95, at ¶ 9. It is beyond dispute that Plaintiffs did not achieve

this goal.  The Amended Ordinance expanded but did not eliminate the restrictions Plaintiffs challenged.  The record also establishes that Plaintiffs never amended their pleadings to include a demand that the Township be compelled to apply the Leaf Blower Ordinance's seasonal ban and penalties to individuals and, in that way, treat Plaintiffs equally.  The Court therefore holds that Plaintiffs have not prevailed in this matter.  *See, e.g.*, *Cannata v. Marlton Vill. Homeowners Ass'n*, 2010 WL 4053953, at * 3 (App. Div. July 27, 2010) (rejecting argument plaintiffs "obtained the full benefit they were seeking" where plaintiffs sought injunctive relief reversing resolution in complaint, but remained subject to resolution, albeit with fewer restrictions, post-settlement).

Even assuming Plaintiffs had acquired some of the relief sought in the Complaint, Plaintiffs have not demonstrated a factual causal nexus between this litigation and Defendants' amendments to the Leaf Blower Ordinance.  The first prong of the *Mason* test "requires consideration of all factors that contributed to the outcome and an assessment of the lawsuit's importance relative to other influences."  *Denardo v. City of Hoboken*, 2015 WL 9947693, at *10 (App. Div. Feb. 3, 2016).  The examination "is fact-sensitive and evaluates 'the reasonableness of, and motivations for, an agency's decisions.'"  *Golden v. N.J. Inst. of Tech.*, 934 F.3d 302, 312 (3d Cir. 2019) (quoting *Mason*, 196 N.J. at 79).  "[T]he chronological sequence of events [is] an important, although clearly not definitive factor, in determining whether or not defendant[s] can be reasonably inferred to have guided [their] actions in response to plaintiff[s'] lawsuit." *Denardo*, 2015 WL 9947693, at *8 (first and second alterations in original) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir. 1978)).

In *Denardo*, the issue was whether the plaintiffs were prevailing parties after challenging the City of Hoboken's rent-control ordinance.  The plaintiffs and putative class were "current

and former multi-family property owners whose property was subject to" Hoboken's rent-control ordinance. *Id.* at *1 n.2. For years Hoboken's efforts to regulate and fairly administer applications to increase rent were hampered by lax recordkeeping and inconsistent enforcement. *Id.* at *1-4. In February 2010, the plaintiffs in *Denardo* filed their complaint, alleging that Hoboken's failure to appropriately administer its rent-control ordinance was unconstitutional and caused them economic loss. *Id.* at *4. Around eight months later, in December 2010, Hoboken began to consider an early draft of the ordinance that would become Z-88. Z-88 addressed some of the very rent-control deficiencies raised in the *Denardo* complaint, such as Hoboken's practice of retroactively enforcing vacancy decontrol certificates and registration requirements. *Id.* at *5. Hoboken enacted Z-88 in March 2011 to address inequities in rent-control regulations, after the trial court denied the defendants' motion for summary judgment in *Denardo*, and while the matter remained pending. *Id.* at *6.

      The plaintiffs argued that Hoboken's enactment of Z-88 entitled them to an award of fees under the *Mason* catalyst theory test. The trial court disagreed. Although the trial court concluded that the relief the plaintiffs secured had a basis in law, the court found that the plaintiffs had not established a factual, causal nexus between their lawsuit and the enactment of Z-88. *Id.* at *8. The Appellate Division agreed, and affirmed the trial court. The Appellate Division acknowledged that the plaintiffs had survived summary judgment and that the class had been certified. However, the court noted, the plaintiffs had not secured affirmative relief. The court also found that factors beyond the *Denardo* litigation, including other lawsuits, had a more cognizable role in causing Hoboken to adopt Z-88. *Id.* at *9. Therefore, even as the Appellate Division acknowledged that "the class action lawsuit cannot be entirely discounted as having some influence in the legislative process here[,]" the court nevertheless found that the lawsuit

11

still did not qualify as a "'necessary and important' factor in the passage of Z-88" sufficient to satisfy the first prong of the catalyst test. *Id.* at *10-11.

Plaintiffs argue a factual causal nexus exists here because: (a) in the Complaint and throughout this litigation, Plaintiffs maintained the Leaf Blower Ordinance's distinction between commercial entities and individuals rendered the Leaf Blower Ordinance unconstitutional, Pls.' Br. in Supp., D.E.85, at pp. 11-12; (b) in their cross-motion for summary judgment and opposition to Defendants' summary judgment motion, Plaintiffs explained that the Leaf Blower Ordinance would be constitutional if its terms applied equally to commercial and non-commercial entities, *id.* at pp. 12-14; (c) after the parties' summary judgment motions were fully briefed and awaited oral argument, "Defendants amended their ordinance in the exact same way Plaintiffs told them they needed to in order to meet the rational basis test" by eliminating "all distinctions between commercial entities and everyone else," *id.* at pp. 15-16; and (d) the Interpretive Statement of the Amended Ordinance states the amendments were to "help achieve greater equity" in the Township's leaf blower policy. *Id.*

Plaintiffs' argument suffers from several important shortcomings. First, Plaintiffs can point to no litigation victories before enactment of the Amended Ordinance that might suggest a causal link. It is well-established that the extent and timing of the relief obtained by a plaintiff can strongly suggest a causal link between the litigation and the actions taken by a defendant. *See Jones v. Hayman*, 418 N.J. Super. 291, 306 (App. Div. 2011). For example, there was direct evidence of such a nexus in both *Jones v. Hayman* and *D. Russo, Inc. v. Twp. of Union*, 2014 WL 7723566 (N.J. App. Div. Feb. 2, 2015), because those plaintiffs secured significant affirmative relief before the corrective action taken by the defendants. In *Jones*, the defendants took measures mooting the plaintiffs' litigation "[s]hortly after" the plaintiffs received a preliminary

injunction and obtained class certification. 418 N.J. Super. at 297. The plaintiffs – female inmates who challenged their transfer to the previously all-male New Jersey State Prison – were transferred back to the all-women Edna Mahan Correctional Facility less than a month after the Chancery Division granted the plaintiffs' motions for injunctive relief and class certification, and denied the defendants' summary judgment motion. *Id.* at 297-98. In *D. Russo*, the plaintiffs acquired injunctive relief prohibiting enforcement of a municipal ordinance and raised challenges to the ordinance as amended before the defendant township repealed the ordinance entirely. 2014 WL 7723566, at *1-2.

In this case, Plaintiffs did not secure any injunctive relief restricting Maplewood Township from enforcing the Leaf Blower Ordinance before the Township enacted the Amended Ordinance. Nor did Plaintiffs obtain a favorable ruling from the Court on any dispositive issue. Further, more than three years passed between the filing of the Complaint on October 20, 2017, and enactment of the Amended Ordinance on February 2, 2021. There is therefore no reason to believe that either Plaintiffs' filing of this litigation, or any rulings or other case-related developments while it was pending were catalysts for the Maplewood Township Committee's amendments to the Ordinance.

Second, the meeting minutes from the January 5, 2021 and February 2, 2021 public meetings of the Township Committee reflect public support for expanding the Ordinance for reasons having nothing to do with this litigation. The residents who spoke on the proposed amendments at the January 5, 2021 meeting supported either expanding the scope of the Ordinance, or banning gas-powered leaf blowers altogether because of environmental, noise pollution, and quality-of-life concerns. That is consistent with the testimony of Mr. De Luca. Mr. De Luca testified that as the COVID-19 pandemic caused people to spend considerably more

13

time at home, he received feedback from Maplewood residents that gas-powered leaf blowers, particularly the noise associated with them, affected residents' quality of life. *See also* Declaration of Roger Desiderio, D.E. 86-2, at ¶¶ 4-5. *See also* January 5, 2021 Meeting Minutes, D.E. 95, at p. 19 (Committeewoman Adams reporting that Township Committee was discussing amendments to the Ordinance in response to "residents' concerns and concern over issues of sustainability and quality of life").

Moreover, Mr. De Luca and Mr. Desiderio both testified that this litigation was not discussed when the Township Committee considered amending the Ordinance during the January 5, 2021, January 19, 2021, and February 2, 2021 meetings. The Court acknowledges Mr. Desiderio's testimony that the Township Committee would not have discussed pending litigation involving the Township in open session. However, Plaintiffs have the burden of proof and were afforded the opportunity to take discovery in this matter. Plaintiffs have not put forth any evidence to suggest that the Township Committee proposed the amendments to the Leaf Blower Ordinance as a way to resolve this matter. Moreover, no resident who spoke in favor of amending the Ordinance raised this litigation as a concern or motivation.

Plaintiffs rely on the Amended Ordinance's goal of "achiev[ing] greater equity" to argue that the Amended Ordinance's purpose was to equalize the restrictions on residents and commercial entities. Considered in isolation, that provision might appear to support Plaintiffs' position. However, the Interpretive Statement, when considered in full, strongly suggests that the principal catalysts for the Amended Ordinance were the Township's motivations to reduce noise pollution and improve residents' quality of life, given that people had begun to spend much more time at home during the day.

The Interpretive Statement provides in full:

> WHEREAS, Ordinance 2854-17 was passed on April 4, 2017; and
>
> WHEREAS, since that time, the Township of Maplewood ("Township") residents have supported the ordinance especially in 2020, in light of so many people working and learning remotely from home; and
>
> WHEREAS, the Township wishes to continue to strengthen its commitment to public health and wellness and environmental sustainability and believes that the proposed amendments will help achieve greater equity and public health; and
>
> WHEREAS, commercial grade battery powered leaf blowers have become more readily available and accessible, since the adoption of Ordinance #2854-17; and
>
> WHEREAS, the Township believes that the passage of the within ordinance would more clearly reflect the needs and values of the Maplewood community.

Exhibit E to Joint Stipulation of Facts, D.E. 95, at p. 39. The second clause in the Interpretive Statement observes that more people had been working or studying at home since 2020. The third clause picks up where the first left off, and expresses a belief that the amendments would promote public health and environmental sustainability, in addition to achieving greater equity. Finally, the fourth clause observes that higher-capacity battery-powered leaf blowers are more readily available now than in 2017, when the Township enacted the original Leaf Blower Ordinance. The Court presumes that the Township Committee perceived battery-powered leaf blowers as less environmentally and socially harmful than gas-powered leaf blowers. In any event, the Interpretive Statement's references to environmental and quality-of-life concerns are entirely consistent with the statements of both residents and members of the Township Committee at the public meetings concerning expanding the restrictions on gas-powered leaf blowers.

That the Amended Ordinance did not revoke but instead expanded the off-limits period for gas-powered leaf blowers from May 15 of each year to May 1 further supports the conclusion that the Township Committee enacted the amendments principally in response to quality-of-life and environmental concerns, not to resolve or moot this litigation. That amendment did not eliminate any distinctions between commercial entities and residents, and was entirely unnecessary to resolve this lawsuit. Moreover, the Township prohibited the use of gas-powered leaf blowers on Sundays. Joint Stipulation of Facts, D.E. 95, at ¶¶ 27-28; *see also* id. at pp. 26-28, 39-41. Those amendments expanded the restrictions on the use of gas-powered leaf blowers during some of the busiest landscaping seasons of the year, specifically spring and summer. Those changes are undoubtedly consistent with Defendants' assertion that the Township Committee enacted the Amended Ordinance in reaction to residents' complaints about noise pollution and the potential environmental pitfalls of gas-powered leaf blowers.

The Court therefore cannot conclude with certainty that the Township's "belie[f] that the proposed amendments will help achieve greater equity and public health" refers to equalizing the restrictions as between residents and Plaintiffs. *See id.* at p. 26. It is true that the Amended Ordinance's elimination of distinctions between residents and commercial entities equalized restrictions. However, when read in context with the rest of the Interpretive Statement and the record as a whole, the more plausible conclusion is that the "greater equity and public health" language refers to the Township's aim of maintaining a balance between the health and well-

being of those working and studying from home during the COVID-19 pandemic and the individuals and entities that undertake landscaping with the use of gas-powered leaf blowers.[5]

Plaintiffs urge the Court to discredit the Amended Ordinance's connection to the COVID-19 pandemic because of the Amended Ordinance's publication in February 2021. Pls.' Br. in Supp., D.E. 85, at p. 16. Plaintiffs argue "the timing of the amendment illustrates the artificiality of that claim," considering Defendants amended the Leaf Blower Ordinance "nearly a year into the pandemic . . . after an entire leaf-blowing season has come and gone . . . in the dead of winter." *Id.* The Court acknowledges Plaintiffs' reservations but nevertheless iterates that the initial burden remains on Plaintiffs to demonstrate – not Defendants to disprove – a factual causal nexus. *Mason*, 196 N.J. at 76. The burden shifts to Defendants to show that Plaintiffs' suit was not a catalyst for the actions taken only after Plaintiffs have presented sufficient proofs. *See id.* at 57, 76. Plaintiffs have not done so.

For those reasons, the Court concludes that Plaintiffs have not met their burden of demonstrating a factual causal nexus. The record of proceedings before this Court, the record of proceedings before the Township Committee, and the additional restrictions in the Amended

---

[5] At the March 29, 2022 hearing, Mr. De Luca testified that "achieve greater equity" refers to balancing a resident's ability to care for their home and yard with the right or ability of that resident's neighbors to peacefully enjoy their property. Mr. Desiderio, who as Township Attorney was responsible for drafting both the Ordinance and the Amended Ordinance, testified that phrase referred to enacting an ordinance that would apply equally to residents and commercial entities. *See also* January 5, 2021 Meeting Minutes, D.E. 95, at p. 19 (Committeewoman Adams reporting that "[t]he second proposal is to apply the ordinance equally to residents and commercial entities"). However, the testimony of Mr. De Luca and Mr. Desiderio are not necessarily inconsistent. There is no dispute that the Amended Ordinance expanded the restrictions on residents and, in the process, equalized the restrictions on commercial entities and residents. The Court nevertheless finds that expanding the restrictions on residents was merely a mechanism by which the Township was able to reduce overall the use of gas-powered leaf blowers, not the principal motivation for the changes. The other mechanism was expanding the seasonal ban and the Sunday ban.

Ordinance compel the conclusion that residents' quality-of-life and environmental concerns, not this litigation, were the principal catalysts for the Amended Ordinance. Indeed, even if this matter "cannot be entirely discounted as having some influence in the legislative process here[,] a causal link [is] not so 'strongly suggest[ed]' to warrant a shift in the burden of proof to defendants." *Denardo*, 2015 WL 9947693, at *11 (third alteration in original) (quoting *Jones*, 418 N.J. Super. at 306).

Neither of the cases Plaintiffs rely upon persuade the Court otherwise. In *Schwartz v. Borough of Highland Park*, 2017 WL 3222554, at *1 (App. Div. July 31, 2017), four homeowners challenged the constitutionality of a municipal ordinance requiring them to maintain sidewalks abutting their respective properties. *Id.* The plaintiffs obtained a preliminary injunction prohibiting enforcement of the ordinance and, soon after, moved for an award of attorneys' fees. *Id.* at *1-2. The trial court initially denied the fee motion, finding it to be premature because there was not yet a final determination on the merits. *Id.* at *2. After the plaintiffs moved for leave to appeal that decision, the defendants repealed and replaced the challenged ordinance. *Id.* at *3. The trial judge granted the plaintiffs' renewed application for attorneys' fees, finding the homeowners' "consistent advocacy" was the catalyst for the amendments. *Id.* at *4-5 (finding no abuse of discretion in trial court's reasoning). Plaintiffs argue that, as in *Schwartz*, their "consistent advocacy" compelled Defendants to amend the Leaf Blower Ordinance. *Id.* at pp. 14-15. There is, however, a salient difference: The *Schwartz* homeowners had already secured preliminary injunctive relief enjoining enforcement of the ordinance. *Schwartz* is therefore inapposite largely for the same reasons as *Jones* and *D. Russo*.

*Wahab v. New Jersey*, 818 F. App'x. 136, 137 (3d Cir. Aug. 28, 2020) is also dissimilar. There, the plaintiff sued her employer, a state agency, seeking to enjoin enforcement of a

18

workplace policy's confidentiality provision as an unconstitutional prior restraint on speech. *Id.* The district court denied Wahab an injunction, and she timely appealed. *Id.* The employer thereafter modified the contested provision, "fix[ing] the exact issues that Wahab had challenged" in the manner Wahab demanded. *Id.* Specifically, the employer deleted the confidentiality provision after briefing but "right before oral argument" on Wahab's appeal. *Id.* The Third Circuit Court of Appeals found these facts "strongly suggest[ed] causation." *Id.* at 138. Defendants' amendments to the Leaf Blower Ordinance, however, were not made in the manner Plaintiffs demanded, nor were they made "right before oral argument." Accordingly, neither *Schwartz* nor *Wahab* support a finding that Plaintiffs have established a factual causal nexus in this matter.

In sum, the Court holds that Plaintiffs are not entitled to attorneys' fees because of their failure to establish (1) that they received any requested relief, and (2) that a factual causal connection exists between this litigation and Defendants' amendments to the Leaf Blower Ordinance.[6]

---

[6] On April 13, 2022, Defendants submitted a transcript of the January 5, 2021 Maplewood Township Committee meeting. Exhibit A to Declaration of Elizabeth Fritzen, D.E. 96-1. Plaintiffs objected by letter also filed on April 13, 2022. Letter from David J. Mairo, Esq., D.E. 97. Plaintiffs argued that the Court should not consider the transcript because the parties had submitted and agreed to rely on the Joint Stipulation of Facts and exhibits thereto, and the evidentiary hearing concluded on March 29, 2022. However, the transcript of the January 5, 2021 meeting did not impact this Court's ruling on the instant motion. The Court reviewed the transcript solely to ensure its understanding of the factual background concerning the January 5, 2021 meeting was accurate.

### IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorneys' fees is denied.  An appropriate Order accompanies this Opinion.

*Michael A. Hammer*
**Hon. Michael A. Hammer,
UNITED STATES MAGISTRATE JUDGE**

Dated:  April 26, 2022